**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| MICHAEL J. KRIZ, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05CV3254 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| DR. SANAT K. ROY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Motion To Quash Plaintiff's Subpoena or, in the Alternative For Protective Order (Filing No. 93) filed by the Box Butte County Mental Health Board of the Twelfth Judicial District (Board).[1] The Board, a non-party from whom discovery is sought, filed a brief (Filing No. 94), an affidavit of counsel (Filing No. 95), and an index of evidence (Filing No. 96) supporting its motion. The plaintiff filed a brief (Filing No. 98) in opposition to the Board's motion and the Board filed a reply brief (Filing No. 99). Dr. Sanat K. Roy (Dr. Roy) did not participate in the briefing of this motion.

**BACKGROUND**

This case arises from the plaintiff's involuntary civil commitment to a mental health facility. On October 20, 1992, the Board ordered the civil commitment of the plaintiff to the Lincoln Regional Center in Lincoln, NE, pursuant to the Nebraska Mental Health Commitment Act. **See** Filing No. 66 – Complaint ¶ 11. The plaintiff has resided at the Lincoln Regional Center since his civil commitment in 1992. *Id.* ¶ 5, 9, 11.

The plaintiff initiated this action on September 29, 2005, seeking damages pursuant to 42 U.S.C. § 1983. **See** Filing No. 1. On February 11, 2008, the plaintiff filed an amended complaint. **See** Filing No. 66. According to the amended complaint, the plaintiff

---

[1] As a convenience, this document contains certain cross-document hyperlinks to documents previously filed in this case. This document also contains links to the Nebraska local rules and legal citation from the federal reporters. The hyperlinked documents appear in blue underlined text. Except with regard to the local rules, access to the hyperlinked material is subject to fees pursuant to user agreements. The hyperlinks may be accessed without PACER fees by use of the public computer terminal in the Clerk's office.

has been adjudged to have a mental illness, and that illness qualifies him as an individual with disabilities. *Id.* at p. 6. The plaintiff has received fifteen years of inpatient treatment for the mental illness at a facility that begins treatment with inpatient treatment services and proceeds to community transition services after an average of three years. *Id.* at p. 4. The plaintiff's segregated confinement prevents his participation in integrated community residential programs. *Id.* at p. 6. The plaintiff alleges such confinement perpetuates the assumption that persons with mental illnesses are incapable or unworthy to participate in community life and diminishes the everyday life activities of the plaintiff. *Id.*

Based on these facts, the amended complaint sets forth claims against the Board and Dr. Roy for violations of the plaintiff's constitutional and statutory rights. *Id.* at p. 5. In Count I, the plaintiff alleges a violation of his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution. In Count II, the plaintiff alleges the Board and Dr. Roy practiced unlawful discrimination against the plaintiff based on his disability, in violation of Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981 (2006), and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12132. Finally, in Count III, the plaintiff alleges the Board and Dr. Roy failed to administer services to the plaintiff in the most integrated setting possible by keeping the plaintiff unnecessarily segregated from the community in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (2006).

Following the amended complaint, both Dr. Roy and the Board filed separate motions to dismiss the plaintiff's amended complaint. **See** Filing Nos. 72, 77. On June 25, 2008, the court issued an order denying Dr. Roy's motion to dismiss, but granting the Board's motion to dismiss. **See** Filing No. 87. The court found any action by the Board in connection with the commitment or review of the commitment would have been a quasi-judicial function and the plaintiff's allegations against the Board were therefore barred by judicial immunity. *Id.* Accordingly, the Board was dismissed as a party defendant. *Id.*

On August 5, 2008, the plaintiff served a *subpoena duces tecum* on the "Custodian of records for the Box Butte County Mental Health Board of the Twelfth Judicial District." **See** Filing No. 89. The subpoena requested "[a]ll documents related to file entitled In the Interest of Michael J. Kriz Alleged to be a Dangerous Person, Case No. MH 754." *Id.* On

August 14, 2008, the Board, as a non-party, moved to quash the subpoena, or in the alternative, for a protective order.  **See** Filing No. 93.  In support of its motion to quash the subpoena, the Board makes two arguments.  First, the Board asserts the requested file is privileged and confidential pursuant to Neb. Rev. Stat. § 71-961 and therefore subject to a motion to quash under Fed. R. Civ. P. 45(c)(3)(A)(iii).  **See** Filing No. 94, p. 3.  Second, the Board contends, even if the file is accessible by the plaintiff, the file is not relevant to the current lawsuit.  *Id.* at 6.  The Board states it possesses approximately 1000 pages of documents dating back to the plaintiff's original commitment in 1992.  **See** Filing No. 94, p. 8.  The plaintiff counters the Board's first argument by stating the requested documents are not confidential for the subject's counsel or persons authorized by the court.  **See** Filing No. 98, p. 3-4.  Further, the plaintiff states the requested file is relevant evidence of the plaintiff's commitment, including the procedural history of his care.  *Id.* at 6.

In the alternative, the Board argues it has shown "good cause" to merit a protective order pursuant to Neb. Rev. Stat. § 71-961(1)(e) and Fed. R. Civ. P. 26(c), so production of the file should be ordered on specific terms, by a specific discovery method, and limited to certain matters and certain time frames.  **See** Filing No. 94, p. 9. However, the Board does not suggest any terms, methods or limitations.  The plaintiff does not specifically discuss the alternative motion for a protective order in his brief opposing the motion; however, he claims the Board has not shown "good cause."  **See** Filing No. 98, p. 4.

### ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents . . ."  Fed. R. Civ. P. 26(b)(1).  However, "[t]he District Court does have discretion to limit the scope of discovery."  *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998).  In effect, to determine if a matter is discoverable, our analysis requires us to first determine whether a matter is relevant to a claim.  If a matter is relevant to a claim, it is necessary to determine if the matter is subject to a privilege preventing its discovery, or if the court should use its discretion to limit discovery on the matter.

**A.    Relevance**

Relevant evidence includes "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "Determinations of relevance in discovery rulings are left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *Hayden v. Bracy*, 744 F.2d 1338, 1342 (8th Cir. 1984).

In his amended complaint, the plaintiff alleges that, while under the care of Dr. Roy at Lincoln Regional Center, he was subjected to cruel and unusual punishment, unlawfully discriminated against based on his disability, and unnecessarily segregated from the community and thereby denied treatment in the most integrated setting possible. **See** Filing No. 66. The plaintiff contends the requested commitment file is necessary to establish the procedural history of the plaintiff's care while under civil commitment. **See** Filing No. 98, p. 6. According to the Board, the requested commitment file contains "approximately 1000 pages of documents dating back to the Plaintiff's original commitment on October 20,1992." **See** Filing No. 94, p. 8. It is reasonable to infer that a file containing information about the plaintiff's civil commitment and care could bear on the his allegations of abuse, discrimination and unnecessary segregation. Because the file could bear on, or lead to other matters that could bear on issues in the plaintiff's case, particularly the history of the plaintiff's care, the court finds the file is relevant. The court turns next to the question of privilege.

**B.    Privilege**

"On timely motion, the issuing court must quash or modify a subpoena that . . .(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). "A person withholding subpoenaed information under a claim that it is privileged . . . must: (i) expressly make the claim; and (ii) describe

the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A). Rule 501 of the Federal Rules of Evidence governs privileges in the federal courts. Generally, privileges are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. However, in a civil context, "with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege . . . shall be determined in accordance with State law." *Id.*

In the instant case, the Board asserts the file sought in the plaintiff's subpoena is protected from disclosure by a privilege that has a statutory basis within the Nebraska Mental Health Commitment Act. The Act states in pertinent part:

> All records kept on any subject shall remain confidential except as otherwise provided by law. Such records shall be accessible to (a) the subject, except as otherwise provided in subsection (2) of this section, (b) the subject's legal counsel, . . . (e) persons authorized by an order of a judge or court . . .

Neb. Rev. Stat. § 71-961(1). Additionally, subsection 2 restricts the subject's access to records:

> Upon application by the county attorney or by the administrator of the treatment facility where the subject is in custody and upon a showing of good cause therefor, a judge of the district court of the county where the mental health board proceedings were held or of the county where the treatment facility is located may order that the records not be made available to the subject if, in the judgment of the court, the availability of such records to the subject will adversely affect his or her mental illness or personality disorder and the treatment thereof.

Neb. Rev. Stat. § 71-961(2).

Assuming the above statute grants a privilege, it is nevertheless clear the plaintiff or the plaintiff's counsel made an attempt to access the plaintiff's records by serving the subpoena upon the "Custodian of Records" for the Board, which is an explicit exception to the privilege. Neb. Rev. Stat. § 71-961(1)(a) and (b). The Board asserts that "it is most certainly plausible that 'the availability of such records to the subject will adversely affect

his or her mental illness or personality disorder and the treatment thereof.'" **See** Filing No. 94, p. 9. This assertion appears to imply the plaintiff should be restricted from accessing the file based upon Neb. Rev. Stat. § 71-961(2); however, the Board has made no demonstration of fact showing subsection 2 is applicable to this case. Additionally, while Neb. Rev. Stat. § 71-961(2) may restrict access to commitment records by the plaintiff, who is the subject of the records, it does not restrict the plaintiff's legal counsel from access to the file. Therefore, by the explicit terms of the statute, the privilege does not preclude disclosure of the file to the plaintiff. The court finds the plaintiff qualifies for an explicitly stated exception to the privilege granted by Neb. Rev. Stat. § 71-961. Accordingly, the Board's motion to quash the plaintiff's subpoena on the basis of privilege is denied.

**C.     Protective Order**

"Because of liberal discovery and the potential for abuse, the federal rules 'confer[ ] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.'" *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (**quoting** *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). An order protecting disclosure or discovery is granted only upon a showing of good cause. **See** Fed. R. Civ. P. 26(c). The party moving for the protective order has the burden to demonstrate good cause for issuance of the order. *Miscellaneous Docket Matter*, 197 F.3d at 926. In order to make the requisite showing of good cause, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotype and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (**quoting** 8 C. Wright & A. Miller, Federal Practice & Procedure § 2035, p. 265 (1970)); *Miscellaneous Docket Matter*, 197 F.3d at 926. Thus, for good cause to exist, the parties seeking protection must show that specific prejudice or harm will result if no protective order is granted. **See** *Frideres v. Schiltz*, 150 F.R.D. 153, 156 (S.D. Iowa 1993).

There can be little doubt that mental health records are of a sensitive nature. Such records are commonly protected from general disclosure to the public. **See** *In re Interest of Michael M.*, 574 N.W.2d 774, 775 (Neb. Ct. App. 1998); NECivR 5.3(b)(3). However,

6

the Board contends good cause exists to enter a protective order preventing disclosure of the requested record to the plaintiff. Alternatively, the Board requests a protective order holding production of the plaintiff's file be ordered on specific terms, by a specific discovery method, and limited to certain matters and certain time frames. The Board does not provide principled limitations regarding this alternative.

Here, the Board failed to establish any fact to support a protective order precluding production of the requested documents to the plaintiff. Therefore, the Board has not met its burden to establish "good cause" for issuance of a protective order. Further, the Board fails to show that, despite the protection granted by Neb. Rev. Stat. § 71-961(1), a protective order is necessary to ensure the confidentiality of the plaintiff's records. Therefore, the Board's motion for a protective order is denied. However, the court will order a protective order to the extent that such records be used for this purposes of this case only.

**IT IS ORDERED:**

1. The Board's Motion To Quash Plaintiff's Subpoena or, in the Alternative For Protective Order (Filing No. 93) is denied.

2. The Board shall have to **on or before November 3, 2008**, to produce the records quested in the plaintiff's August 5, 2008 subpoena.

3. The records disclosed pursuant to the plaintiff's August 5, 2008 subpoena are hereby subject to a protective order to the extent that such records be used for this purposes of this case only.

DATED this 20th day of October, 2008.

BY THE COURT:

 s/ Thomas D. Thalken
 United States Magistrate Judge